**Peter Zapata GARZA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–00–00625–CR.**

Court of Appeals of Texas, Houston (1st Dist.).

May 27, 2004.

Peter Zapata Garza, Beeville, pro se.

Steven J. Lieberman, J.P. Morgan Chase Bank Building, Houston, for Appellant.

Carmen Castillo Mitchell, Assistant District Attorney, John B. Holmes, District Attorney, Houston, for Appellee.

Panel consists of Justices NUCHIA, JENNINGS, and KEYES.

**OPINION ON REMAND FROM THE COURT OF CRIMINAL APPEALS**

TERRY JENNINGS, Justice.

A jury found appellant, Peter Zapata Garza, guilty of possession, with the intent to deliver, more than four grams but less than 200 grams of cocaine. The trial court, after finding true the allegation in an enhancement paragraph that appellant had a prior felony conviction, assessed his punishment at confinement for 22 years and sentenced him accordingly.

In this Court's original opinion, we held that (1) the evidence presented at trial was legally and factually sufficient to support appellant's conviction, (2) appellant waived any error in regard to the trial court's denial of his motion to suppress evidence because he did not object at trial when the State introduced the evidence that he sought to suppress, and (3) the trial court did not err in denying appellant's request, made pursuant to article 38.23 of the Texas Code of Criminal Procedure,[1] for a jury instruction concerning the legality of an inventory of the contents of appellant's van. *See Garza v. State*, No. 01–00–00625–CR, 2002 WL 1585900 (Tex.App.-Houston [1st Dist.] July 18, 2002) (not designated for publication) *rev'd in part and aff'd in part, Garza v. State*, 126 S.W.3d 79 (Tex.Crim.App.2004).

Appellant subsequently filed a petition for discretionary review with the Court of Criminal Appeals challenging this Courts' holdings that the trial court did not err in denying his request for an article 38.23 jury instruction and that appellant waived any error in regard to the trial court's denial of his motion to suppress evidence.[2] In response to appellant's petition, the

---

1. Tex.Code Crim. Proc. Ann. art. 38.23(a) (Vernon Supp.2004).

2. Appellant did not challenge our holdings that the evidence was legally and factually sufficient to support his conviction.

Court of Criminal Appeals affirmed our holding that the trial court did not err in denying his request for an article 38.23 instruction, but reversed our holding that appellant waived any error in regard to the trial court's denial of his motion to suppress evidence. *Garza,* 126 S.W.3d at 85–88.

Accordingly, on remand, we address appellant's remaining two issues, in which he contends that the trial court erred in denying his motion to suppress evidence because the search and seizure of evidence from his van was conducted in violation of the Fourth Amendment[3] and Article I, section 9 of the Texas Constitution.[4]

**Background**

Harris County Sheriff's Deputy W. Kelly, Jr. testified that, while on patrol on FM 1960 around midnight on October 24, 1999, he saw appellant driving a van. When Kelly saw appellant make an illegal left turn, Kelly activated the emergency lights of his patrol car. Appellant, the van's sole occupant, stopped the van in a post office parking lot. After appellant gave his driver's license to Kelly, Kelly ran a computer search, learned that appellant had two outstanding arrest warrants, and called for backup help. When Harris County Sheriff's Deputy R. Rooth and Sergeant B.J. Taylor arrived at the scene, Kelly arrested appellant. As Kelly placed appellant into a patrol car, Rooth and Taylor began to inventory the contents of appellant's van.

Deputy Rooth testified that, as he inventoried appellant's van, he saw, in plain view, an open baby formula can containing narcotics paraphernalia consisting of a small metal bowl, screen, spoon, and some small clear plastic bags. Rooth, based on his experience, explained that these items are commonly used for sifting and packaging cocaine.

Sergeant Taylor testified that, as he inventoried appellant's van, he found what appeared to be a used baby diaper tightly wrapped in a plastic grocery bag. The bag was located on top of some of appellant's personal business papers in a cardboard box, with no lid. Taylor explained that he could see through the bag and tell that a baby diaper was inside. When Taylor detected no odor from the diaper, he opened it and found two plastic bags containing a white, chunky substance. Deputy Kelly tested the white substance at the scene, and it tested positive for cocaine. Charles Moore, a senior forensic chemist for the Harris County Medical Examiner's Office, testified that the two bags contained cocaine, with a total weight of 28.75 grams, including any adulterants and dilutants.

Appellant testified that he did not make an illegal left turn, the cocaine and narcotics paraphernalia found in the van did not belong to him, and that he had no idea that the cocaine was in the van. Although he admitted to having had "a problem" with cocaine, he denied ever selling or distributing it. On cross-examination, appellant admitted that he had two prior convictions for possession of cocaine, one in Harris County and one in Webb County. Appellant further admitted that he had prior convictions for possession of marihuana and for theft.

**Motion to Suppress Evidence**

In his remaining two issues, appellant contends that the trial court erred in denying his motion to suppress evidence because the search and seizure of evidence from his van was conducted in violation of the Fourth Amendment and Article I, section 9 of the Texas Constitution.

3. U.S. CONST. amend. IV.

4. TEX. CONST. art. I, § 9.

We review a trial court's denial of a motion to suppress evidence for an abuse of discretion. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). A trial court abuses its discretion when it acts without reference to any guiding rules or principles by acting arbitrarily or unreasonably. *Galliford v. State*, 101 S.W.3d 600, 604 (Tex.App.-Houston [1st Dist.] 2003, pet. ref'd). We will afford almost total deference to a trial court's determination of historical facts supported by the record, especially when the findings are based on an evaluation of the credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). In reviewing a ruling on a question of application of law to facts, we review the evidence in the light most favorable to the trial court's ruling. *Id.* However, we review de novo a trial court's determination of reasonable suspicion or probable cause. *Id.* at 87.

A peace officer's inventory of the contents of an automobile is permissible under both the Fourth Amendment and Article I, section 9 if conducted pursuant to a lawful impoundment. *South Dakota v. Opperman*, 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App.1980); *Lagaite v. State*, 995 S.W.2d 860, 865 (Tex.App.-Houston [1st Dist.1999], pet. ref'd). Inventories serve to protect (1) the owner's property while it is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097. Inventories must be conducted in good faith pursuant to reasonable standardized police procedures. *Colorado v. Bertine*, 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987).

Reasonable cause for impoundment of an automobile may exist when the driver is removed from his automobile and placed under custodial arrest, and his property cannot be protected by any means other than impoundment. *Lagaite*, 995 S.W.2d at 865. The State bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to insure the automobile's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Delgado v. State*, 718 S.W.2d 718, 721 (Tex.Crim.App.1986). We note that peace officers need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact, exist. *Mayberry v. State*, 830 S.W.2d 176, 180 (Tex.App.-Dallas 1992, pet. ref'd).

### Fourth Amendment

Appellant first argues that the search and seizure of evidence from his van violated the Fourth Amendment because, "although the officers may have initiated what was described as an inventory search, the search became investigatory in nature and thus exceeded the scope of a lawful inventory search." He asserts that the search of the diaper, "under the guise of an inventory," was unreasonable.

Appellant notes that an inventory is reasonable and lawful under the Fourth Amendment only if conducted for the purposes of an inventory and may not be used by police officers as a ruse for general rummaging in order to discover incriminating evidence. *See Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). Appellant argues that it is "apparent" that the police officers in this case were not interested in safeguarding valuables because there was no evidence that a procedure for an inventory of valuables would include "opening such an innocuous

item as what appeared to be a dirty diaper." He thus concludes that the inventory of his van "was clearly a pretext for an investigatory motive."

However, the record supports an implied finding by the trial court that the inventory was not a ruse. Deputy Kelly testified that, when a driver is arrested and his automobile is to be impounded, it is the policy of the Harris County Sheriff's Department to prepare a written inventory of the contents of the automobile to document any items present and protect the property of the arrested driver. Kelly further testified that, assisted by Deputy Rooth and Sergeant Taylor, he conducted an inventory of appellant's van, prepared a written inventory slip of the contents of the van, and attached the slip to his report. Rooth specifically noted that the officers were not looking for narcotics or contraband when conducting the inventory. Considering this testimony, we cannot conclude that the inventory "was clearly a pretext for an investigatory motive."

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence on the grounds that the search and seizure of evidence from appellant's van violated the Fourth Amendment.

### Article I, Section 9

Appellant next argues that the search and seizure of evidence from his van violated Article I, section 9 of the Texas Constitution because (1) the impoundment of his van was "unlawful," and (2) the search of the "dirty diaper" was unreasonable.

In regard to the lawfulness of the impoundment, appellant asserts that "the State failed to prove a lack of reasonable alternatives to justify impoundment of [his] vehicle." Texas courts have considered several factors in determining the reasonableness of an impoundment of an automobile following a custodial arrest, including whether: (1) someone was available at the scene of the arrest to whom police could have given possession of the automobile; (2) the automobile was impeding the flow of traffic or was a danger to public safety; (3) the automobile was locked; (4) the detention of the arrestee would likely be of such duration as to require police to take protective measures; (5) there was some reasonable connection between the arrest and the automobile; and (6) the automobile was used in the commission of another crime. *Josey v. State,* 981 S.W.2d 831, 843 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd).

■ Here, appellant asserts that his wife arrived at the scene shortly after the arrest and "the arresting officers made no effort to determine if anyone was available to take possession of the van"; his van was neither impeding the flow of traffic nor a danger to public safety; his van could have been locked; there was no connection between the arrest and the van; the van was not used in the commission of another crime; and there was no showing that his detention would be of such duration as to require impoundment of the van.

Although there is no evidence that the van was impeding traffic, that it could not be locked, or that it had been used in the commission of a crime, other factors demonstrate that impoundment of appellant's van was reasonable under the circumstances. Deputy Kelly testified that he saw appellant driving the van immediately before he arrested appellant. This demonstrates a reasonable connection between the arrest and the van. *Cf. Benavides,* 600 S.W.2d at 812 (no reasonable connection between arrest and automobile when automobile found lawfully parked several blocks from arrest scene). Also, Deputy Rooth testified that, although appellant's wife arrived at the arrest scene and identified herself, she did not do so until after the deputies had already called for a

wrecker to tow the van, begun the inventory, and found the narcotics paraphernalia and cocaine. Therefore, when the officers had made the decision to impound appellant's van, at just after midnight, there was no one at the scene to whom they could have given possession of it. Moreover, appellant, the driver of the van, was under custodial arrest and his detention would likely have been of such duration as to require the deputies to take protective measures. *See Josey*, 981 S.W.2d at 843 (where driver of automobile under custodial arrest, likely duration of driver's detention required police officer's protective measures). The record thus contains ample evidence to support the trial court's implied finding that the impoundment of appellant's van was reasonable and, therefore, lawful.

In regard to the reasonableness of the search of the diaper, appellant asserts that there was no evidence "that safeguarding [his] property was the basis for removing the 'dirty' diaper from the bag and opening it." He further asserts that "the handling of the diaper by [Sergeant] Taylor offered no basis to conclude the diaper contained a weapon or other contraband." Relying on *Autran v. State*, 887 S.W.2d 31, 42 (Tex. Crim.App.1994), appellant argues that the search of the diaper was unreasonable, under Article I, section 9, because the deputies, instead, "could have easily recorded the existence of the diaper or photographed it."

In *Autran*, police officers, while inventorying the contents of an automobile, found cocaine inside a closed "plastic key box" located under the driver's side seat. *Id.* at 33. A three-judge plurality opinion of the Court of Criminal Appeals held that, Article I, section 9 "provides greater protection" than the Fourth Amendment "in the context of inventories." *Id.* at 42. The plurality opinion "refuse[d] to presume the search of a closed container reasonable under [A]rt[icle] I, section 9 simply because an officer followed established departmental [inventory] policy." *Id.* It concluded, thus, that peace officers "may not rely upon the inventory exception" to conduct a "warrantless search" of a closed or locked container. *Id.*

Although the plurality holding in *Autran* supports appellant's argument, it is not binding precedent. *See Vernon v. State*, 841 S.W.2d 407, 410 (Tex.Crim.App.1992) (noting that a plurality opinion does not have "significant precedential value"). Since *Autran*, the Court of Criminal Appeals has consistently held that Article I, section 9 does not offer greater protection against unreasonable searches and seizures than does the Fourth Amendment. *See Hulit v. State*, 982 S.W.2d 431, 436 (Tex.Crim.App.1998) (holding that Article I, section 9 does not provide greater protection than Fourth Amendment in regard to searches and seizures made in performance of "community caretaking function"); *Johnson v. State*, 912 S.W.2d 227, 235–36 (Tex.Crim.App.1995) (holding that requirements for determining when person is seized under Article I, section 9 are same as under Fourth Amendment); *Crittenden v. State*, 899 S.W.2d 668, 673–74 (Tex. Crim.App.1995) (holding that analysis for determining when stop is pretextual under Article I, section 9 is same as under Fourth Amendment). Moreover, other intermediate appellate courts, in several cases, have expressly declined to follow *Autran*, and the Court of Criminal Appeals has refused discretionary review in those cases in which a petition has been filed. *See State v. Mercado*, 993 S.W.2d 815, 819 (Tex.App.-El Paso 1999, pet. ref'd); *Jurdi v. State*, 980 S.W.2d 904, 907 (Tex.App.-Fort Worth 1998, pet. ref'd); *Wells v. State*, 968 S.W.2d 483, 486 (Tex.App.-Eastland 1998, pet. ref'd); *Trujillo v. State*, 952 S.W.2d 879, 881 (Tex.App.-Dallas 1997, no

pet.); *Hatcher v. State*, 916 S.W.2d 643, 646 (Tex.App.-Texarkana 1996, pet. ref'd).

The Court of Criminal Appeals has specifically noted that there is "no substantive difference" between the wording of the Fourth Amendment and Article I, section 9—each protects individuals against "unreasonable" searches and seizures. *Johnson*, 912 S.W.2d at 232. Moreover, Texas precedent, existing before the Fourth Amendment was made applicable to state actions, did not support granting individuals greater protections from state actions under Article I, section 9. *Id.* at 233. In fact, after the Fourth Amendment was made applicable to the States in 1949 and up until 1991, the Fourth Amendment and Article I, section 9 were interpreted to have the same meaning. *Id.* Because of the similarity of the two provisions, the Court of Criminal Appeals has instructed us that "the Fourth Amendment decisions of the Supreme Court should be viewed . . . as providing guidance in interpretations of Art[icle] I, [section] 9." *Id.* at 234.

■■■ If we, as an appellate court, "decide to raise the ceiling of freedom of Texas citizens from unreasonable searches and seizures," we may do so only "by choosing in individual cases to interpret Art[icle] I, [section] 9 in a manner justified by the facts of the case, state precedent on the issue, and state policy considerations." *Id.* Here, none of these considerations justifies such a raising of the ceiling. Accordingly, we decline to follow the reasoning and holding of *Autran.* We hold that, "in the context of inventories," Article I, section 9 of the Texas Constitution does not offer greater protection to individuals against unreasonable searches and seizures than the Fourth Amendment.

■■■ The Supreme Court has held that, under the Fourth Amendment, a peace officer may open a closed container as part of an inventory of an automobile as long as the inventory is conducted in good faith

pursuant to reasonable standardized police procedures. *Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742–43. We find this Fourth Amendment authority to be reasonable, persuasive, and in harmony with Texas' protection against unreasonable searches and seizures. Accordingly, we further hold that, under Article I, section 9, this standard applies in the context of inventories.

■■■ Here, Deputy Kelly testified that the inventory of appellant's van was conducted pursuant to the departmental policies of the Harris County Sheriff's Department. Sergeant Taylor testified that, while conducting the inventory of appellant's van, he found what appeared to be a used diaper tightly wrapped in a plastic grocery bag on top of appellant's personal business papers. After he detected no odor from the diaper, Taylor opened it and found two plastic bags containing cocaine. Because the apparently soiled diaper emitted no odor and was located on top of appellant's personal business papers, the record supports an implied finding by the trial court that Taylor could, in good faith, have concluded that something other than urine or feces, and which constituted property that needed to be inventoried, was located inside.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress evidence on the grounds that the search and seizure of evidence from appellant's van violated Article I, section 9 of the Texas Constitution.

We overrule appellant's two remaining issues.

### Conclusion

We affirm the judgment of the trial court.