In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00364-CR




ERIC LEE ROTHENBERG, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 177th District Court
 Harris County, Texas
                                         Trial Court Cause No. 922868




O P I N I O N

          After the trial court denied his motion to suppress, appellant, Eric Lee
Rothenberg, pleaded guilty, pursuant to a plea agreement, to the offense of possession
with intent to deliver methamphetamine weighing more than four grams and less than
200 grams. See Tex. Health & Safety Code Ann. §§ 481.102(6), 481.112(a), (d)
(Vernon 2003). As part of the agreement, appellant also pleaded true to two
enhancement paragraphs alleging the prior offenses of delivery of, and possession of,
controlled substances. The trial court found appellant guilty, assessed his punishment
at 30 years in prison, and certified his right to appeal the pretrial ruling. See id. §
481.112(d); Tex. Pen. Code Ann. §§ 12.32(a), 12.42(d) (Vernon 2003); Tex. R. App.
P. 25.2(a)(2)(A). We are asked to determine whether, under Texas Constitution
article I, section 9, law-enforcement personnel could, without appellant’s consent,
unlock a box in appellant’s car and review its contents during a post-arrest inventory
of the vehicle. See Tex. Const. art. I, § 9. Based on this Court’s recent resolution
of this very issue in Garza v. State, No. 01-00-00625-CR, 2004 WL 1172323 (Tex.
App.—Houston [1st Dist.] May 27, 2004, no pet. h.), we answer the question in the
affirmative. We affirm.
Background
          One evening, appellant was driving a borrowed car, in which his wife, Julianne
Rothenberg, was a passenger. Katy Police Officer Shiller pulled appellant over for
his car’s having an expired registration sticker. Officer Hughes stopped at the scene
soon after Officer Shiller had arrived. When the officers ran appellant’s driver’s
license number, they discovered an outstanding arrest warrant, arrested appellant,
handcuffed him, and placed him in a police car.
          When the officers told appellant that the car could be turned over to Julianne
or towed, appellant requested the former. However, Julianne advised the officers that
she had been having seizures that day, was weak, and was not feeling well. She “just
didn’t know if [she] was in the best condition to be [driving] at the time,” and she told
the officers that it was probably not a good idea for her to drive. Accordingly, the
officers were unable to release the car to Julianne, and the car was instead
impounded.
          After Julianne had also been placed in the patrol car, the officers began an
inventory of the impounded car. During the inventory, the officers found a large bag
of lithium batteries; two bank bags containing white, powdery residue; and a bottle
of ephedrine inside the car.


 Additionally, the officers found in the car some beakers
and two books—one showing where to obtain chemicals and chemical supplies, and
the other outlining the chemical composition of various drugs, including
methamphetamine.
          The officers also found a lockbox in the car’s hatchback. At the suppression
hearing, Julianne testified that appellant kept jewelry, money, and tax records for his
jewelry business in the lockbox. Appellant told the officers that the lockbox
contained cash, jewelry, checks, bank statements, paperwork, and tools for his jewelry
business. Appellant testified that the lockbox was important to him and that he would
want it taken care of.
          The Katy Police Department had a policy, which the officers followed with
appellant’s car, for inventorying impounded vehicles. That policy required officers
to inventory “all items inside of” the vehicle. Specifically, departmental policy
required that “personal items that are worth something” and “anything of value” be
inventoried. Officer Shiller explained that “if all items aren’t documented, then
obviously the person whose vehicle was towed can claim that there was anything in
the vehicle . . . . [I]f there is a suitcase or something . . . that we are going to leave
with the car, we are pretty much responsible for whatever is in the vehicle. If we
don’t look and see what’s in it, then he could say there is a million dollars in there or
anything else he wanted to and we would be responsible for that.” Officer Shiller
also agreed that anything, including something that might be capable of harming
officers, could be in a closed container.


 Both officers testified that they would not
be allowed to deposit the lockbox with the departmental property room without first
having determined the box’s contents.
          The officers had already taken appellant’s keys, along with the other property
that appellant had on his person, when they arrested appellant. When the officers
asked him if his keys included a key to the lockbox, appellant responded
affirmatively, but he refused to consent to a search of the box. Nevertheless, the
officers opened the lockbox with the key. Inside, the officers found several hundred
small plastic baggies; a narcotics test kit containing vials, one of which contained a
strong acid that could be used to make methamphetamine; scales; a flat, metal spoon;
a bottle of PH test strips; funnels; brushes; and small baggies containing
methamphetamine.
Standard of Review
          Rulings on motions to suppress are subject to a bifurcated standard of review. 
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost
total deference to the trial court’s determination of historical facts that depend on
credibility choices. See Guzman v. State, 955 S.W. 2d 85, 87-88 (Tex. Crim. App.
1997); Wilson v. State, 98 S.W.3d 265, 271 (Tex. App.—Houston [1st Dist.] 2002,
pet. ref’d). However, we decide de novo whether the trial court erred in applying the
law to the facts. Carmouche, 10 S.W.3d at 327; Wilson, 98 S.W.3d at 271. 
 
          Although the trial court was not required to make fact findings or legal
conclusions based on the type of suppression grounds asserted here, it did, which was
within its discretion. See 40 George E. Dix & Robert O. Dawson, Texas
Practice: Criminal Practice & Procedure § 4.177 (2nd ed. 2001) [hereinafter
“Dix & Dawson”]; see also Janicek v. State, 634 S.W.2d 687, 690 (Tex. Crim. App.
1982) (noting that trial court made fact findings after suppression hearing concerning
allegedly illegal entry into home); Scallion v. State, 433 S.W.2d 438, 439 (Tex. Crim.
App. 1968) (noting that trial court made fact findings after suppression hearing
concerning allegedly illegal arrest). Accordingly, we review its express fact findings
with great deference. See, e.g., State v. Fudge, 42 S.W.3d 226, 230 (Tex.
App.—Austin 2001, no pet.) (in review of suppression ruling concerning validity of
temporary detention, stating, “Based on the standard of review, we will give great
deference to this finding.”); see also Scallion, 433 S.W.2d at 439 (noting, “The record
in the case supports the judge’s findings,” which were filed as written findings after
suppression hearing in which defendant sought suppression of fruits of allegedly
illegal arrest); State v. Velasquez, 994 S.W.2d 676, 677 (Tex. Crim. App. 1999)
(relying on officer’s testimony from hearing, at which defendant sought suppression
of fruits of search, because trial court’s written fact findings stated that officer was
credible and that court below took his testimony as true).
Inventory
          In part of his sole issue on appeal, appellant argues that the search of the
lockbox was invalid as an inventory under Texas Constitution article I, section 9,
which he claims provides broader protection than does the Fourth Amendment of the
United States Constitution.
          We begin by noting that appellant does not challenge on appeal the validity of
his arrest,


 the officers’ right to impound his car, the officers’ right generally to
inventory the car’s contents (with the exception of their opening the lockbox), or the
search or inventory of the lockbox under the Fourth Amendment. Rather, he
challenges the officers’ right, under Texas Constitution article I, section 9, to open
the lockbox and to review its contents as part of the vehicle’s post-arrest inventory. 
See Tex. Const. art. I, § 9.
          The trial court found in pertinent part as follows:
11.Officer Shiller began to inventory the vehicle in preparation for
impoundment.
 
. . .
 
13.Officer Shiller’s inventory was conducted in accordance with the
Katy Police Department’s standard operating procedures for such
inventories.
. . .
 
16.During the inventory, Officer Hughes discovered a locked box in
the rear of the vehicle.
 
17.During the inventory, Officer Shiller opened the box, and found
the substance that is the basis of Defendant’s motion to suppress.

The trial court expressly concluded, in pertinent part:
2.The search of ERIC ROTHENBERG’s vehicle was a routine
automobile inventory search made without warrant in accordance
with the police department’s standard operating procedures.
 
3.The search of the box in ERIC ROTHENBERG’s vehicle was
within the scope of a reasonable routine automobile inventory
search made without a warrant.

The trial court made no findings or conclusions concerning any other basis to justify
the search of the lockbox.
          The inventory has long been recognized as falling outside the Fourth
Amendment’s warrant requirement. See Colorado v. Bertine, 479 U.S. 367, 371, 107
S. Ct. 738, 741 (1987). The policies supporting inventories are the need to protect
the owner’s property while it is in police custody, to protect police from claims of
lost, stolen, or vandalized property that is in their custody, and to protect the police
from potential danger. See Florida v. Wells, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635
(1990); Garza, 2004 WL 1172323, at *2. As appellant notes, the Fourth Amendment
to the United States Constitution allows police to open closed—even
locked—containers as part of the inventory of an automobile, as long as they do so
in accordance with standardized police procedures and as long as the police do not
act in bad faith or for the sole purpose of investigation. See Wells, 495 U.S. at 4, 110
S. Ct. at 1635; Bertine, 479 U.S. at 375-76, 107 S. Ct. at 741-42; Garza, 2004 WL
1172323, at *3.
          Appellant relies on Autran v. State in support of his argument that article I,
section 9 provides broader protection for closed containers during inventories than
does the Fourth Amendment. See 887 S.W.2d 31 (Tex. Crim. App. 1994) (plurality
op.). In Autran, a three-judge plurality of the Court of Criminal Appeals held that
article I, section 9 provided broader protection than did the Fourth Amendment in the
context of inventories and thus did not allow the opening of closed containers, locked
or unlocked, during an inventory. See id. at 41-42. Judge Clinton concurred in the
judgment, observing that, although the plurality might be correct that the Texas
Constitution provided greater protection in this context, “other considerations and
much more analysis is necessary before the Court may confidently say so . . .” Id. at
42 (Clinton, J., concurring in judgment). Three more judges concurred in the
judgment based solely on Fourth Amendment grounds. See id. at 42, 43 (Campbell
and Maloney, J.J., concurring in judgment, with Meyers, J., joining one opinion). 
Two judges dissented. See id. at 43-49 (McCormick, J., dissenting, joined by White,
J.).
          Autran supports appellant’s position. However, this Court has recently noted
that Autran has no precedential value because it is a plurality opinion. See Garza,
2004 WL 1172323, at *5 (citing Vernon v. State, 841 S.W.2d 407, 410 (Tex. Crim.
App. 1992)).


 Although we may nonetheless follow the reasoning and holdings of a
plurality opinion, we are free to decline to follow them, especially if good reasons
exist to do so. See Hatcher v. State, 916 S.W.2d 643, 645 (Tex. App.—Texarkana
1996, pet. ref’d) (“We decline . . . to follow the plurality opinion in Autran because
we do not believe that Autran constitutes either binding precedent or sound law.”). 
 Because good reasons exist not to follow the Autran plurality opinion, this Court,
only days ago, declined to follow the Autran plurality’s reasoning, holding instead
that “‘in the context of inventories,’ Article I, section 9 of the Texas Constitution does
not offer greater protection to individuals against unreasonable searches and seizures
than the Fourth Amendment.” Garza, 2004 WL 1172323, at *6.
 
          Based on our holding in Garza, we overrule appellant’s challenge. We
elaborate on Garza’s reasoning herein. First, since deciding Autran, the Court of
Criminal Appeals appears to have departed from the Autran plurality’s reasoning and
conclusion, albeit without expressly overruling or distinguishing Autran. See
Crittenden v. State, 899 S.W.2d 668 (Tex. Crim. App. 1995); Johnson v. State, 912
S.W.2d 227 (Tex. Crim. App. 1995). In Crittenden, a majority of the court held that
a “pretext stop” was valid under article I, section 9 for reasons similar to those
making it valid under the Fourth Amendment. See Crittenden, 899 S.W.2d at 673-74. 
In a footnote, without mentioning Autran, the majority stated,
Absent some significant difference in the text of the two provisions, or
some historically documented difference in attitude between the
respective drafters, there would be no apparent reason to prefer an
interpretation of Article I, § 9 any different from our preferred
interpretation of the Fourth Amendment. We will not read Article I, §
9 differently than the Fourth Amendment in a particular context simply
because we can.

Id. at 682 n.8 (emphasis in original).



 
          Similarly, in Johnson, a plurality of four judges on the court concluded that a
defendant was not seized within the meaning of article I, section 9 until he yielded to
a show of authority, which was also the standard under the Fourth Amendment. See
Johnson, 912 S.W.2d at 235. In reaching its holding, and very much along the lines
of what the Crittenden majority indicated, the Johnson plurality stated:
A plain reading and comparison of the language of the Fourth
Amendment and Art. I, § 9 reveals no substantive difference. . . . The
Fourth Amendment and Art. I, § 9 both protect the same right (freedom
from unreasonable search and seizures) to the same degree (persons,
houses, papers, and effects/possessions). 
 
. . . 
 
In Autran v. State, . . . the plurality believed there had to be an
underlying intent for the two provisions to be different because a narrow
construction would leave Art. I, § 9, specifically, and the Texas
Constitution, generally, void of independent meaning. 
 
It would be practically impossible to discern from the language,
alone, of Art. I, § 9 the intent of the citizens who framed that provision. 
There is little if any evidence of the intent of the Framers of Art. I, § 9. 
We are left with the impression that the language of Art. I, § 9 is
virtually identical to the language of the Fourth Amendment. 

Id. at 232, 233 (footnote omitted); accord Trujillo v. State, 952 S.W.2d 879, 881
(Tex. App.—Dallas, no pet.) (summarizing this conclusion from Johnson in declining
to follow Autran). Moreover, in a footnote, the Johnson plurality appeared to
criticize the Autran plurality’s goal of “quest[ing] for ‘independent meaning’” in the
Texas Constitution. Johnson, 912 S.W.2d at 233 n.6.
          We state expressly what we clearly indicated in Garza, that the precedential
value of Autran has been diminished by Johnson and Crittenden. See Garza, 2004
WL 1172323, at *5.



          Second, a majority of the Court of Criminal Appeals has only once
substantively relied on the Autran plurality. See State v. Ibarra, 953 S.W.2d 242, 244
(Tex. Crim. App. 1997). And even in Ibarra, the court relied only on the factors that
the Autran plurality had suggested for determining whether the state Constitution
provides greater protection than its federal counterpart, not on Autran’s holding
concerning inventory of closed containers. See Ibarra, 953 S.W.2d at 244-45
(holding that Texas Constitution requires voluntariness of consent to search to be
proved by clear and convincing evidence, although federal Constitution requires only
preponderance of evidence). Importantly, the high court has never followed Autran’s
specific holding concerning the validity of inventories of closed containers under the
Texas Constitution. In fact, since Autran, a majority of the Court of Criminal
Appeals has not found that article I, section 9 provides greater protection than that
available under the Fourth Amendment in any context before it except for that in
Ibarra.


 And the same court, which in Crittenden and Johnson appears to have
placed into question Autran’s specific holding concerning inventories of closed
containers, has counseled that the judiciary not “create new constitutional doctrines
[based on reading the state Constitution differently] without solid jurisprudential
foundation” and that the judiciary create such “new constitutional doctrines” “only
when unique aspects of Texas history, jurisprudence, or law support that separate
interpretation.” Cobb v. State, 85 S.W.3d 258, 268 (Tex. Crim. App. 2002); see also
Crittenden, 899 S.W.2d at 682 n.8 (“Absent some significant difference in the text
of the two provisions, or some historically documented difference in attitude between
the respective drafters, there would be no apparent reason to prefer an interpretation
of Article I, § 9 any different from our preferred interpretation of the Fourth
Amendment.”).
          Third, we held in Garza that considerations such as “‘the facts of the case, state
precedent on the issue, and state policy considerations’” did not justify “‘raising the
ceiling of freedom of Texas citizens from unreasonable searches and seizures’” by
reading article I, section 9 more broadly than the Fourth Amendment in the context
of inventories. Garza, 2004 WL 1172323, at *6 (quoting Johnson, 912 S.W.2d at
234). An analysis of the Autran plurality’s reasoning fully supports our holding in
Garza.
          In Autran, after concluding that the constitutional provisions’ similar language
and the dearth of evidence concerning the intent behind the Texas provision gave no
guidance as to the breadth of article I, section 9,


 the plurality considered three other
factors in reaching its holding: (1) history and application, (2) comparable
jurisprudence, and (3) practical policy considerations. Autran, 887 S.W.2d at 39-41. 
As for the first factor, the Autran plurality began by noting that the Fourth
Amendment derived from the Massachusetts State Constitution. Id. at 39. The
plurality then noted that similarities existed among the Massachusetts Constitution,
the Fourth Amendment, and article I, section 9. Id. The plurality found it
“significant” that the Massachusetts Supreme Court had construed its state
constitution to provide more protection than did the Fourth Amendment. Id. 
However, the Autran plurality did not explain the reasoning behind the Massachusetts
court’s conclusion, why that conclusion mandated a similar interpretation of our
constitution, or why the United States Supreme Court’s narrower interpretation of the
Fourth Amendment—which was based on the Massachusetts Constitution—was
incorrect or inapposite to Texas’s Constitution. See id. In fact, the plurality’s sole
explanation was the conclusory statement that “[c]onsideration of the history of the
Fourth Amendment, art. XIV of the Massachusetts Constitution, and the similarities
between art. I, § 9 and the Massachusetts Constitution, provides evidence that art. I,
§ 9 was intended to provide broader protection as well.” Id. As for the second factor,
the plurality discussed three states in which the judiciary had concluded that the state
constitution provided more protection than did the Fourth Amendment in the context
of inventories of closed containers. Id. at 40-41. However, the plurality provided
virtually no analysis as to why the courts of these states so concluded or why their
conclusion supported interpreting our constitution similarly. See id. As for the third
factor, the plurality merely set out the three purposes of inventories generally, with
no discussion or analysis of how those purposes supported a broader interpretation
of article I, section 9. Id. at 41. Instead, the plurality stated only, “These policies
have frequently satisfied our requirement that a search be ‘reasonable.’” Id. As
former Court of Criminal Appeals Judge Clinton remarked concerning the Autran
plurality, “more mature deliberation” and “other considerations and much more
analysis is necessary before the Court may confidently [reach the plurality’s
conclusion] . . . .”


 Id. at 42 (Clinton, J., concurring in judgment).
          Our decision in Garza is also well supported by other caselaw. In Garza, we
joined six of our sister courts of appeals


 in declining to follow the Autran plurality. 
See Garza, 2004 WL 1172323, at *5. As we noted in Garza, the Court of Criminal
Appeals has refused review in eight of the cases in which courts have declined to
follow Autran.


 See id. at *5 (noting, “[O]ther intermediate appellate courts . . . have
expressly declined to follow Autran, and the Court of Criminal Appeals has refused
discretionary review in those cases in which a petition has been filed.”). Although the
decision to refuse petition for review is not itself precedential, the fact that the Court
of Criminal Appeals has not corrected any lower court that has declined to follow
Autran, despite repeated opportunities for the high court to do so, further
demonstrates that our holding in Garza is correct and that Autran is not the law. See
State v. Mercado, 993 S.W.2d 815, 818-19 (Tex. App.—El Paso 1999, pet. ref’d)
(noting that Court of Criminal Appeals has had opportunity to correct lower courts’
refusal to follow Autran, but has not done so); Gonzalez, 990 S.W.2d at 835 (reaching
same conclusion based on refusals of petition for review); Trujillo, 952 S.W.2d at 881
(noting similar matters).
          Accordingly, applying Garza’s holding, we utilize Fourth Amendment
precedent to conclude that a peace officer may, under article I, section 9 of the Texas
Constitution, open a closed container as part of an inventory of an automobile as long
as the inventory is conducted in good faith pursuant to standard police procedure. 
Garza, 2004 WL 1172323, at *6 (citing Bertine, 479 U.S. at 374-75, 107 S. Ct. at
742-43). The undisputed evidence set out above supports the trial court’s findings
that the officers conducted an inventory of the car’s contents pursuant to their
department’s standard procedures and supports the court’s conclusion that the
inventory’s scope extended to the lockbox.
          We overrule the portion of appellant’s issue arguing that the search was invalid
as an inventory. Given our disposition of this portion of the issue, we need not reach
the remaining argument under appellant’s issue, which asserts that the search was also
invalid as a search incident to arrest.



Conclusion
          We affirm the judgment of the trial court.
 

 
Tim Taft
Justice

Panel Consists of Justices Taft, Hanks, and Higley. 
 
Publish. Tex. R. App. P. 47.2(b).