NO. 07-07-0473-CR, 07-07-0474-CR, 07-07-0475-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

NOVEMBER 19, 2009
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â ______________________________

CALVIN JARROD HESTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54,995-E, 54,996-E, 54,997-E; HONORABLE ABE LOPEZ, JUDGE
_______________________________


Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
MEMORANDUM OPINION 
Â Â Â Â Â Â Â Â Â Â Appellant Calvin Jarrod Hester was indicted for the offenses of possession of
marijuana, possession of cocaine with intent to distribute, enhanced, and possession of
methamphetamine with intent to distribute, enhanced.


 Each indictment also included a
deadly weapon notice. At trial, appellant plead guilty to each of the three charged offenses
and plead âtrueâ to the enhancements alleged in the cocaine and methamphetamine
possession indictments. Appellant elected to have the trial court decide punishment and
to decide the deadly weapon issue for each offense. 
Â Â Â Â Â Â Â Â Â Â The State presented evidence to show that Amarillo police officers executed a
search warrant at a one-bedroom house occupied by appellant and his girlfriend. Both
were present when the warrant was executed. Officers found marijuana,
methamphetamine, cocaine, and drug paraphernalia in various locations in the small
house, along with nearly $1,000 in cash. The house was equipped with video cameras
inside. Police found a .380 semi-automatic pistol with a magazine, stored in a Crown
Royal bag. The bag was in the bedroom inside a backpack located on the floor, next to a
safe and a dresser. The safe contained coins and gift cards. One drawer of the dresser
contained marijuana. The backpack also contained a homemade plastic marijuana bong.
Appellant told the police all the drugs were his, for his personal use. Both appellant and
his girlfriend were arrested.
Â Â Â Â Â Â Â Â Â Â The next day, appellantâs girlfriend placed a phone call to her mother from the Potter
County Jail, telling her the police missed a large amount of cash near the bathtub and
asking that she retrieve the cash. Police intercepted the call and executed a second
warrant, finding nearly $8,000 in cash in the bathroom of appellantâs residence, concealed
in a Crown Royal bag that appellant admitted was his.
Â Â Â Â Â Â Â Â Â Â Appellant testified at trial. Although he acknowledged the money and drugs were his,
he said the .380 pistol was not his. He testified he did not know where it came from. He
said the backpack was not his, and that it looked like âa femaleâs bag.â He said the bedroom
contained clothes belonging to another female friend, in addition to his girlfriendâs clothes. 
He further stated that Manuel Campbell, referred to in the record as a âknown drug dealer,â
stayed at the house occasionally and was there just before the police arrived, cooking crack
cocaine. Appellantâs testimony also suggested Campbell was angry with him and had
reasons to âgetâ appellant.
Â Â Â Â Â Â Â Â Â Â After hearing the evidence presented, the judge found it sufficient to show appellant
used the pistol to facilitate his possession and distribution of contraband and entered a
deadly weapon finding for each offense.


 On appeal, through six issues, appellant
challenges the legal and factual sufficiency of the evidence to support the deadly weapon
finding in each cause. We affirm.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â AnalysisÂ Â Â Â Â Â Â Â Â Â By appellantâs six issues, he contends the evidence presented did not show that the
gun was his, that it was in close proximity to drugs, that he was the sole occupant of the
house, or that other evidence directly linked him to the gun. 
Evidentiary Sufficiency Supporting Deadly Weapon FindingÂ 
Â Â Â Â Â Â Â Â Â Â To review evidence for legal sufficiency, we must view the evidence in the light most
favorable to the verdict and determine if a rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. See Narvaiz v. State, 840 S.W.2d 415,
423 (Tex.Crim.App.1992), cert. denied, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791
(1993) citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).
Â Â Â Â Â Â Â Â Â Â A factual sufficiency review requires us to view all of the evidence in a neutral light
and ask whether the jury was rationally justified in finding guilt (or an affirmative finding)
beyond a reasonable doubt. Watson v. State, 204 S.W.3d 404, 415 (Tex.Crim.App. 2006). 
We apply the same analysis to evidence supporting an affirmative deadly weapon finding. 
See Mendez v. State, No. 01-07-00680-CR, 2008 WL 5263415, *2 (Tex.App.âHouston [1st
Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (conducting
sufficiency review of evidence supporting deadly weapon finding). Evidence is factually
insufficient when the evidence supporting the conviction is so weak that the verdict seems
clearly wrong and manifestly unjust, or the evidence supporting the conviction is outweighed
by the great weight and preponderance of the contrary evidence so as to render the verdict
clearly wrong and manifestly unjust. Grotti v. State, 273 S.W.3d 273, 283 (Tex.Crim.App.
2008); Roberts v. State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Sanchez v. State, 243
S.W.3d 57, 72 (Tex.App.âHouston [1st Dist.] 2007, pet. refâd). Our evaluation should not
intrude upon the fact finder's role as the sole judge of the weight and credibility given to any
witness's testimony. See Fuentes v. State, 991 S.W.2d 267, 271 (Tex.Crim.App.1999). The
weight to be given contradictory testimonial evidence is within the sole province of the
fact-finder. See Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Cain v. State, 958
S.W.2d 404, 408-09 (Tex.Crim.App. 1997). In conducting a factual-sufficiency review, we
must discuss the evidence that, according to the appellant, most undermines the trial court's
findings. See Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).
Â Â Â Â Â Â Â Â Â Â An affirmative deadly weapon finding may be made when the State establishes, inter
alia, (1) that a deadly weapon was used or exhibited during the commission of a felony
offense or (2) that the defendant was a party to the offense and knew that a deadly weapon
would be used or exhibited.


 Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 3g(a)(2) (Vernon Supp.
2008). Any employment of a firearm or other deadly weapon, even its simple possession, to
facilitate the commission of another offense constitutes a "use" of the weapon. Patterson v.
State, 769 S.W.2d 938, 941 (Tex.Crim.App.1989).
Â Â Â Â Â Â Â Â Â Â In Patterson, officers executing a search warrant found the defendant sitting on a
couch near a table on which methamphetamine was located. Id. at 939. A pistol was on the
couch beside the defendant's leg. Id. The court held that the evidence supported a finding
that the defendant used the pistol to facilitate his possession of the methamphetamine. Id.
at 942. In Gale v. State, twenty pounds of marihuana, several unloaded firearms, and
ammunition for those firearms were found in the bedroom closet of the defendant's house.
Gale v. State, 998 S.W.2d 221, 223 (Tex.Crim.App.1999). The court held that the evidence
supported a finding that the defendant used the weapons to facilitate his possession of the
marijuana. Id. at 226. In Coleman v. State, drugs and drug paraphernalia were found
throughout the defendant's residence. Coleman v. State, 145 S.W.3d 649, 650-51
(Tex.Crim.App. 2004). In a bedroom, officers found a pistol, a rifle, and a safe containing
bottles of PCP and a large amount of money. Id. at 651. The court held that a rational trier
of fact could find that the defendant used the firearms to facilitate his possession and
distribution of the drugs. Id. at 655. In Wynn v. State, the court reversed a deadly weapon
finding because the defendant was charged as a party to the offense and the evidence
showed he was not in the house with the drugs and guns, he was not the only occupant of
the house, the owner of the guns was not determined, and no guns or drugs were found in
the only room connected with the defendant. Wynn v. State, 847 S.W.2d 357, 360-61
(Tex.App.âHouston [1st Dist.] 1993), affâd, 864 S.W.2d 539 (Tex.Crim.App. 1993).
Â Â Â Â Â Â Â Â Â Â Courts have recognized that it is common for narcotics dealers to possess firearms for
the purpose of protecting themselves because they possess large amounts of drugs and
cash. See, e.g., Moreno v. State, 978 S.W.2d 285, 289 (Tex.App.âFort Worth 1998, no pet.).
See also Wilson v. State, 132 S.W.3d 695, 698 (Tex.App.âAmarillo 2004, pet. refâd)
(recognizing it is ârather settledâ that weapons are associated with the drug trade). The Court
of Criminal Appeals has noted that a firearm is âusedâ during the commission of the felony
offense of possessing contraband in the sense that the firearm protects and facilitates the
care, custody and management of the contraband. Gale, 998 S.W.2d at 224. See also
Dimas v. State, 987 S.W.2d 152, 154-55 (Tex.App.âFort Worth 1999, pet. refâd) (narcotics
supervisor testified it was customary for drug dealers to have firearms and âuseâ them to
protect themselves, their drugs, and their money). 
Â Â Â Â Â Â Â Â Â Â Appellant argues his case is distinguishable from Patterson, and is more similar to
Wynn. He points to evidence showing he was not the only occupant of the house, and that
his girlfriend knew the location of the $8000 hidden in the bathroom. But the evidence shows
appellant was the primary occupant of the small house. Among the items police found there
was a rent receipt in appellantâs name. Appellant testified his relationship with his girlfriend
was of long standing, and testified she, like appellant, sold marijuana. Neither her presence
in the house nor her knowledge of the hidden cash weakens the incriminating inferences
properly drawn from the presence of the pistol in the bedroom. See also Charles v. State, 915
S.W.2d 238, 241 (Tex.App.âBeaumont 1996, pet. ref'd) (also distinguishing Wynn). 
Â Â Â Â Â Â Â Â Â Â Appellant also points out the evidence of the locations at which the different drugs were
found in the house is not specific, and argues there is thus no evidence the pistol and the
drugs were found in close proximity. We disagree. Appellant testified the marijuana blunts
were in the dresser drawer, and other evidence also shows marijuana in the bedroom. 
Appellant also testified powder cocaine and additional marijuana were found in the refrigerator
in the kitchen. While the pistol was not in the same container as any of the drugs, it was found
very near the dresser. Further, the bedroom and the kitchen of the house were immediately
adjacent, so the pistol was within feet of the drugs located there. 
Â Â Â Â Â Â Â Â Â Â Citing Wynn, appellant also argues there is no evidence his fingerprints were found on
the gun or in the room where it was found, others had access to the house and no evidence
shows he owned the gun. Appellant is correct the record contains no fingerprint evidence. 
But fingerprint evidence was unnecessary to establish that appellant lived in the one-bedroom
house, that the room in which the pistol was found was his bedroom, and that the backpack
containing the pistol was on the floor along the wall between the bedroom and the bathroom,
covered by a blanket. Appellant testified to those facts. Appellant denied the gun was his, but
it was in his bedroom among other items he acknowledged were his, and the trial court was
not required to accept his denial. See Cain, 958 S.W.2d at 408-09.
Â Â Â Â Â Â Â Â Â Â By his guilty plea, appellant admitted he possessed the cocaine and methamphetamine
with the intent to distribute it. He also plead guilty to possession of marijuana and testified he
sold marijuana blunts, and âa block of weed with a whole bunch of rolled up bluntsâ were in the
bedroom dresser. The gun was found inside the nearby backpack in a Crown Royal bag, and
appellant acknowledged ownership of the $8000 cash found in another stashed Crown Royal
bag. Based on the standard discussed in Patterson, 769 S.W.2d at 941, the fact-finder could,
from the evidence it heard, infer that appellant was in possession of the gun found in his
bedroom and it was used to protect and facilitate his possession of drugs. See Hooper v.
State, 214 S.W.3d 9, 15 (Tex.Crim.App. 2007) (discussing permissible inferences). The nature
of the weapon supports that conclusion. See Coleman, 145 S.W.3d at 655 (Cochran, J.,
concurring). 
Â Â Â Â Â Â Â Â Â Â Viewing all the evidence in light most favorable to the judgeâs verdict, we find that the
evidence is sufficient to allow the fact finder to determine beyond a reasonable doubt that
appellant possessed the weapon and used it to facilitate possession and intended distribution
of marijuana, cocaine, and methamphetamine. Accordingly, we find the evidence legally
sufficient to support the trial courtâs finding that appellant used a deadly weapon during the
commission of the three drug offenses. Appellantâs first three issues are overruled.
Â Â Â Â Â Â Â Â Â Â On the same evidence, we find the evidence is also factually sufficient to support the
trial courtâs affirmative deadly weapon findings. Appellant testified that his girlfriend and
Campbell had access to his home, and effectively argues the gun could have belonged to
either of them. As noted, he also testified Campbell was out to âgetâ him. Viewing the
evidence in a neutral light, we find that favoring the findings is not so weak, nor the contrary
evidence appellant emphasizes so strong, as to make the trial courtâs findings clearly wrong
or manifestly unjust. Accordingly, we hold that the evidence is factually sufficient to support
the finding that appellant used a deadly weapon during the commission of the three narcotics
offenses. We overrule appellantâs fourth, fifth and sixth issues.
Â Â Â Â Â Â Â Â Â Â Having overruled appellantâs issues, we affirm the trial courtâs judgment.
Â 
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice

Â 
Â 
Â 

Â 
Do not publish.

Â 



talic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0289.cr%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0289.cr%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0289.cr%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0289.cr%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-even-header:url("07-10-0289.cr%20opinion_files/header.htm") eh1;
 mso-header:url("07-10-0289.cr%20opinion_files/header.htm") h1;
 mso-even-footer:url("07-10-0289.cr%20opinion_files/header.htm") ef1;
 mso-footer:url("07-10-0289.cr%20opinion_files/header.htm") f1;
 mso-first-header:url("07-10-0289.cr%20opinion_files/header.htm") fh1;
 mso-first-footer:url("07-10-0289.cr%20opinion_files/header.htm") ff1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-0289-CR

Â 

IN THE
COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL E

Â 



JULY
21, 2011

Â 



Â 

ANDREW JOSEPH WILSON,  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellant


v.

Â 

THE STATE OF TEXAS,Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Appellee

___________________________

Â 

FROM THE 432ND DISTRICT COURT OF TARRANT
COUNTY;

Â 

NO. 1146243D; HONORABLE RUBEN
GONZALEZ, PRESIDING

Â 



Â 

Memorandum
Opinion

Â 



Â 

Before QUINN, C.J., PIRTLE, J., and BOYD, S.J.[1]

Â Â Â Â Â Â Â Â Â Â Â  Andrew
Joseph Wilson was convicted of unlawfully posessing a firearm after pleading
guilty to the charge.Â  On appeal, he
challenges the trial courtÂs denial of his motion to suppress the firearm, which
weapon was discovered in his vehicle.Â  We
affirm the judgment. 

Â Â Â Â Â Â Â Â Â Â Â  Â On January 21, 2009, Officers Nickolas Brown
and Ryan Sparks were driving down a residential street in a moderate to high crime
area in Fort Worth.Â  It was around 2:00
a.m.Â  They noticed a vehicle parked on
the street facing the wrong direction. Â They decided to cite it, and as they began to
place the citation on the vehicle, appellant was discovered sitting in it.

Â Â Â Â Â Â Â Â Â Â Â  When
questioned why he was so parked, appellant replied that he was waiting for his
uncle.Â  However, he was unable to supply
a last name for the man and then admitted that he was waiting for a friend.Â  The officers obtained appellantÂs
identification, checked it with dispatch, and discovered that he had
outstanding arrest warrants.Â  This
resulted in their placing him under arrest.Â 
At that point, the officers also decided to impound the car and
contacted a wrecker for that purpose.Â  Before
the wrecker removed the vehicle, it was searched, and the officers found a
handgun in the console during that search.Â 
It was that evidence that appellant sought to suppress.Â  And, he attempted to do so on the grounds
that the search was neither a permissible search incident to arrest nor an
inventory search. 

Â Â Â Â Â Â Â Â Â Â Â  We review
the trial courtÂs ruling on a motion to suppress under the standard discussed
in Ford v. State, 158 S.W.3d 488
(Tex. Crim. App. 2005).Â  In doing so, we
defer to the trial courtÂs resolution of historical fact but review de novo its interpretation of the
law.Â  Id.
at 493.Â  So too do we look at the
totality of the circumstances to determine the legitimacy of the search.Â  Kothe
v. State, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004).Â Â  Â Â 

Â Â Â Â Â Â Â Â Â Â Â  Appellant
argues that because the gun was not accessible to him at the time the search
was conducted, it could not be a search incident to arrest.Â  Thus, it violated the tenets of Arizona v. Gant, 556 U.S. 332, 129 S.Ct.
1710, 173 L.Ed.2d 485 (2009).Â  Per the
latter, police may search a vehicle incident to arrest only it if is reasonable
to believe that the arrestee might access the vehicle at the time of the search
or that the vehicle contains evidence of the offense underlying the arrest.Â  Id. 556
U.S. at __; 129 S.Ct. 1719.Â  Officer
Brown conceded at trial that appellant was not capable of returning to his
vehicle and that there was no reason to believe there was any evidence in the
car pertaining to his arrest. Â 

Â Â Â Â Â Â Â Â Â Â Â  Yet, Brown
also testified that the officers were unable to leave the vehicle where it was
located because it was parked illegally, they knew of no one with whom to leave
it and, consequently, they decided to impound it.[2]Â  Furthermore, the wrecker was contacted before
the search occurred and the gun found.Â 
Additionally, Officer Sparks testified that appellantÂs vehicle had
property in it that the officers did not want to be liable for in the event of
theft.Â  

Â Â Â Â Â Â Â Â Â Â Â  Finally, exhibits
at the suppression hearing included a copy of the Fort Worth vehicle
impoundment procedures and a copy of the inventory from the vehicle.Â  The former authorized impoundment if the
vehicle was lawfully parked and the arrestee asked that another take control of
it.Â  Neither condition applied, however,
because the car was illegally parked and appellant never sought to make a request.

Â Â Â Â Â Â Â Â Â Â Â  Police
officers may lawfully inventory the contents of a vehicle after an arrest if the
inventory is conducted pursuant to lawful impoundment of the vehicle.Â  Benavides
v. State, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980); accord St. Clair v. State, 338 S.W.3d 722, 724 (Tex. App.ÂAmarillo
2011, no pet.) (stating that police may conduct an inventory search of a
vehicle if impoundment is the only reasonable alternative to protect it).Â  And, even if a search does not qualify as a
search incident to arrest, it may still qualify as an inventory search.Â  Moskey
v. State, 333 S.W.3d 696, 702 (Tex. App.Â Houston [1st Dist.]
2010, no pet.).Â  

Appellant argues that any alleged inventory
search was a pretext because the police department impoundment procedures did
not authorize an impoundment in this situation, there was no danger to the vehicle
or its contents because the officers had the key, the officers were originally
only going to leave a citation and there were other alternatives to impoundment.Â  However, officers are not required to
independently investigate possible alternatives to impoundment absent some
objectively demonstrable evidence that alternatives existed. Â St.
Clair v. State, supra; Garza v.
State, 137 S.W.3d 878, 882 (Tex. App.ÂHouston [1st Dist.] 2004,
pet. refÂd).Â  So, the contention that
they could have solicited approval from others to leave the car there is of no
moment.Â  

So, given the totality of circumstances
appearing of record, we conclude that the trial court could have legitimately
ruled that the search conducted was a permissible inventory search.

Accordingly, the judgment is affirmed.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Per
Curiam

Do not publish.

Â 

Â 











[1]John
T. Boyd, Senior Justice, sitting by assignment.





[2]A
man claiming to be a friend of appellant approached the officers after
appellant had been arrested, but the friend also had outstanding warrants and
was arrested.Â Â