Jose Deleon RODRIQUEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0069–CR.

Court of Appeals of Texas,
Amarillo.

Sept. 27, 1982.

John Mann, Amarillo, for appellant.

John T. Montford, Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

Appellant was convicted by a jury of delivery of marihuana, Tex.Civ.Stats.Ann. art. 4476–15, sec. 4.05(d), (e) (Vernon 1976), and sentenced by the court to six years in the penitentiary. By two grounds of error, he questions the admissibility of various State exhibits. Because we agree that an exhibit material to the conviction was obtained by an illegal search, we reverse and remand.

The State presented evidence that appellant and his brother-in-law delivered a sub-

stantial quantity of marihuana to undercover law enforcement agents. According to the State's evidence, the parties met at the brother-in-law's house, negotiated the sale and examined the merchandise. When all parties were satisfied, appellant moved his car from the driveway to the alley behind the house. One of the agents then drove a car into the driveway and the parties loaded the marihuana into the agents' car. When an agent handed the money for the marihuana to appellant, surveillance officers converged on the premises and arrested appellant and his brother-in-law as they stood in the driveway next to the house. Appellant's car, still parked in the alley, was impounded and searched without a warrant. An officer testified that it was police department policy to impound the car of a person arrested and that the search, also conducted in accordance with department policy, was for inventory purposes. When the vehicle was impounded, there then was no indication that it had been used for illegal purposes, although there was evidence at the trial that the car was used to transport and store the marihuana.

A small notebook found in appellant's car during the inventory search was admitted into evidence over his objection that it was obtained in an illegal search. A witness identified the notebook and read to the jury the following excerpts from the notebook:

Q. Would you read those entries for the jury, please.

\*    \*    \*    \*    \*    \*

A. It's got "Raymond, loan, two thousand dollars." It's got some other figure. "October 12, 1978, Tina owes us nine hundred sixty dollars. We owe Raymond two thousand dollars. Tina paid one thousand eighty dollars. Us for # nine. Got to buy three thousand one hundred fifty dollars. Money for seventy." On the back, it has "Nancy loan us one thousand two hundred. Raymond five hundred dollars." And has some other figures at the bottom.

Appellant's primary defense to the charge of delivery was that he was an innocent bystander. He presented evidence that he had come to his brother-in-law's house to visit his sister who was recovering from an operation and that he did not own the marihuana or have anything to do with the sale or delivery to the undercover agents.

In final arguments, State's counsel made several references to the notebook. In his opening argument, counsel said:

But what else does the evidence show to you? I submit that this is not a case of mere presence. Or just a case of merely soliciting or aiding a relative in something he just happens to come across because he is up here from Bovina visiting his sick sister. There is too many items of evidence that cannot be refuted. One of which is this little black book here that is found in this man's car in the alley. And you know, I wonder what all these notations mean? From a person in his situation. Talking about two thousand dollars here, about a lot of addition and subtraction, Tina, here is a note that Tina owes us—we have heard about Tina. She was already at the house. We owe Raymond two thousand dollars. Tina paid one thousand eighty dollars for us for nine pounds. Got to buy three thousand one hundred fifty. And what is this last little notation right here? That I found on the second page? Money for seventy pounds. That is about what we have got here today, isn't it, ladies and gentlemen? Seventy pounds. Minus the ten pounds they were going to keep. Here is the sixty. Here is ten. That makes seventy. He did not know what was going on that day?

In closing argument, State's counsel discussed the notebook again, in response to the innocent bystander theory, arguing that the notes were those of a "dope dealer."

By his first ground of error, appellant contends the notebook was inadmissible because it was obtained by an illegal search. The State responds that the notebook was found during a routine and permissible inventory search conducted when the car was impounded. Alternatively, the State says the admission of the notebook was harmless

error even if the search was illegal. The arguments accurately frame the problem.

■ It is now well established that law enforcement agencies are permitted to conduct a reasonable inventory of the contents of an impounded vehicle, without either a search warrant or probable cause for a warrantless search, and that the State may use incriminating evidence found during a valid inventory search. *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *Evers v. State,* 576 S.W.2d 46 (Tex.Cr.App.1978). As noted in *Opperman,* the inventory search is permitted in order to protect the owner's property while it is in police custody and to protect the police from potential danger and against claims over lost or stolen property.

■ There is, however, a threshhold inquiry that must be made when evidence obtained from an inventory search is offered to the fact finder. Before the evidence can be admitted the court must determine whether the impoundment of the vehicle was lawful. The principle, stated in *Benavides v. State,* 600 S.W.2d 809 (Tex.Cr. App.1980), by the Court of Criminal Appeals, is that there must be either some reasonable connection between the arrest and the vehicle or some other reasonable ground for the impoundment.

■ To illustrate the principle, the court in *Benavides* cited numerous cases where impoundment was valid. 600 S.W.2d at 810–11. An analysis of those cases reveals two general categories of events justifying impoundment.

In the first category, the vehicle is the focus of the police activity. For example, the vehicle may be a disabled danger to traffic, illegally parked, abandoned, stolen, or statutorily subject to forfeiture for some reason related to its use.

■ In the second category, the operator of the vehicle is the focus of the police activity and the vehicle is incidental but must be impounded in order to protect it. For example, the operator of the vehicle may become too ill to drive or may be removed from the vehicle and arrested. In those situations, the vehicle may be impounded if it is necessary to prevent it from being a traffic hazard or being stolen or damaged by vandals. Because a judicially sanctioned inventory search is a dilution of the Fourth Amendment right to be secure against unreasonable searches and seizures, the impoundment and search must be carefully examined and narrowly confined in each case.

■ When the foregoing principles are applied here, it is apparent that appellant's car was improperly impounded. Appellant, not his car, was the focus of the agents' activities and there is no evidence that the car needed to be impounded for reasons independent of appellant's arrest. The car was parked in the alley behind his sister's house, away from the driveway where the marihuana was delivered and appellant arrested. The State produced no evidence showing the car was illegally parked or otherwise subject to a legitimate focus of police activity. In the final analysis, there was no reasonable relationship between appellant's arrest and the impoundment of his car and no independent reason to impound the car. It follows that the inventory search, conducted without a warrant or probable cause, was illegal and the notebook was inadmissible.

■ The State points to evidence that the car was used to store and transport the marihuana, presumably attempting to justify the impoundment under § 5.03(a)(5) of Art. 4476–15, Tex.Rev.Civ.Stats. (Vernon 1976), or justify the search on the basis of probable cause. That evidence was developed during the trial, however, when State's counsel was cross-examining appellant's brother-in-law. There is nothing in the record to indicate that the agents had that information when the car was impounded. After-acquired information cannot legitimize an illegitimate search or seizure. *De Lao v. State,* 550 S.W.2d 289, 291 (Tex.Cr.App.1977); *see Scott v. State,* 531 S.W.2d 825, 827 (Tex.Cr.App.1976).

■ The State's primary alternative argument is that the admission of the note-

book into evidence was harmless error. Because the admission of evidence obtained by an illegal search is an error of constitutional dimensions, it can be classified as harmless error only if the reviewing court can conclude that it was harmless beyond a reasonable doubt. *Clay v. State,* 518 S.W.2d 550, 553 (Tex.Cr.App.1975); *Bridger v. State,* 503 S.W.2d 801, 804–05 (Tex.Cr.App.1974). That result can be reached only if a review of the admissible evidence compels the conclusion that the evidence of appellant's guilt is so overwhelming that the tainted evidence would have no harmful effect upon the mind of the average juror. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

■ Under that standard of review, the State's mistake cannot be ignored. Although there was strong evidence of appellant's guilt, he presented evidence that he was an innocent bystander who did not participate in the transaction in question. The illegally seized notebook directly impinged upon that defense, *Bridger v. State, supra,* at 805, by indicating, as State's counsel ably pointed out to the jury, that appellant was a dope dealer who was directly involved in this and numerous comparable transactions. In short, the tainted evidence had a direct bearing on the critical issue of appellant's guilt. Thus, we cannot conclude that the tainted evidence was harmless beyond a reasonable doubt. Ground of error one is sustained.

By his second ground of error, appellant questions the admissibility of certain evidence introduced at the court-tried punishment phase of his trial. Because the question will probably arise again if appellant is re-tried, we will dispose of it. The jury found appellant guilty on October 30, 1979. The court then ordered a pre-sentence report and set the punishment hearing for February 15, 1980. On November 23, 1979, appellant, while driving alone in a Chevrolet Blazer with New Mexico license plates, was stopped by the highway patrol on Interstate Highway 10 for speeding. Appellant told the patrolman that he had lost his driver's license and did not have any other identification. The patrolman then initiated a registration check to determine if the Blazer was stolen. He also opened the door and looked inside the Blazer for identification on the dash, the floor or the seat. At that time, he saw what appeared to be marihuana seeds in a drink holder in the center console. The patrolman then opened the glove compartment box and found, among other things, a bag of what appeared to be marihuana. He immediately arrested appellant and, pursuant to department policy, called for a wrecker to take the Blazer to be stored. While waiting for the wrecker, the patrolman conducted an inventory search and found a substantial quantity of marihuana in the luggage in the Blazer.

Appellant contends his arrest, and the contraband seized, was the product of an illegal search. We do not agree with appellant's contention. In *U.S. v. Ross,* —— U.S. ——, 102 S.Ct. 2157, 73 L.Ed.2d 598 (1982), the U.S. Supreme Court held that a police officer who has legitimately stopped an automobile and has probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the entire vehicle, including compartments and containers within it whose contents are not in plain view. The search may be as thorough as a magistrate could authorize in a warrant particularly describing the place to be searched.

■ In this case, the patrolman was confronted with a vehicle containing out-of-state plates and a driver with no identification. Under those circumstances, his limited intrusion into the vehicle, by opening the door to see if other identification was visible, was not an unreasonable search. *Taylor v. State,* 421 S.W.2d 403, 405–07 (Tex.Cr. App.1967), *cert. den.* 393 U.S. 916, 89 S.Ct. 241, 21 L.Ed.2d 201 (1968). The patrolman's observation at the time of what appeared to be marihuana seeds in plain view in the vehicle provided probable cause for the search that followed. Under *Ross,* he was entitled to search the vehicle and anything in it that might contain marihuana. Thus, there was no error in admitting the evidence in question.

Although *Ross* disposes of the search issue, we observe that, unlike the situation discussed under appellant's first ground, the impoundment of the Blazer was valid. Appellant was properly arrested and, there being no one to remove the vehicle from its location beside an interstate highway, it was impounded in accordance with legitimate department policy for its protection and was inventoried for the protection of the department. Thus, the evidence found pursuant to that inventory was admissible for that additional reason. *Daniels v. State*, 600 S.W.2d 813, 814–15 (Tex. Cr.App.1980). Ground of error two is overruled.

The judgment of conviction is reversed and the case is remanded to the trial court.