ACCEPTED
12-15-00055-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
6/10/2015 6:58:36 PM
CATHY LUSK
CLERK

No. 12-15-00055-CR

IN THE TWELFTH COURT OF APPEALS
TYLER, TEXAS

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
6/10/2015 6:58:36 PM
CATHY S. LUSK
Clerk

JORGE ZEPEDA
APPELLANT

VS.

THE STATE OF TEXAS
APPELLEE

On Appeal from the County Court at Law #2 cause # 002-82159-14
Smith County, Texas
Judge Rodgers

APPELLANT'S BRIEF

Jeff Sanders
State Bar No: 24033153
120 S. Broadway, Suite 112
Tyler, Texas 75702
(903) 593-8040
(903) 595-5532 fax

ORAL ARGUMENT REQUESTED

ATTORNEY FOR APPELLANT

# IDENTITY OF PARTIES AND COUNSEL

A.     Parties to Trial Court's Judgment:

Appellant is JORGE ZEPEDA.
Appellee is The State of Texas.

B.     Names and Addresses of Trial and Appellate Counsel

1.  JORGE ZEPEDA

> Jeff Sanders
> 120 S. Broadway, Suite 112
> Tyler, Texas 75702

2.  The State of Texas

> Michael West
> Smith County District Attorney's Office
> 100 North Broadway
> Tyler, Texas 75702

# TABLE OF CONTENTS

PAGE

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Argument and Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# INDEX OF AUTHORITIES

**CASES**                                                                                       **PAGE**

*Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741,
    93 L. Ed. 2d 739 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635,
    109 L. Ed. 2d 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 21, 22

*South Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097,
    49 L. Ed. 2d 1000 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . .19, 21

*Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980) . . . . 19, 21

*Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000) . . . .17, 18

*Gauldin v. State*, 683 S.W.2d 411, 415 (Tex. Crim. App. 1984) . . . . . . . . 22

*Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010) . . . . . . . . . 17

*Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002) . . . . . . . . . 18

*Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991) . . . . . . . . 20

*Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008) . . . . . . . . . . . 17

*Shepard v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) . . . . . . . . 17

*State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999) . . . . . . . . . 18

*State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) . . . . . 18

*State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008) . . . . . . . . . 19

*State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000) . . . . . . . . . . . 18

*Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010) . . . . . . . 18

*Ward v State*, 659 S.W.2d 643, 646 (Tex. Crim. App. 1983) . . . . . . . . . . . 22

*Banda v. State*, 317 S.W.3d 907, 907-08
    (Tex. App. – Houston[14th District.] 2010, no pet.) . . . . . . . . . . . . . 19

*Fenton v. State*, 785 S.W.2d 443 (Tex. App. Austin 1990) . . . . . . . . . . . . 22

*Garza v. State*, 137 S.W.3d 878, 882
    (Tex. App. – Houston[1st Dist.] 2004, pet. Ref'd) . . . . . . . . . . . . . .
20

*Greer v. State*, 436 S.W.3d 1, 7 (Tex. App. – Waco 2014, no pet.) . . . . . . 20

*Kennedy v. State*, case# 12-13-00248-CR . . . . . . . . . . . . . . . . . . . . . . . 17, 19

*Moskey v. State*, 333 S.W.3d 696, 702
    (Tex. App. – Houston[1st Dist.] 2010, no pet.) . . . . . . . . . . . . . . . . 19

*Rodriguez v. State*, 641 S.W.2d 955
    (Tex. App. – Amarillo 1982, no writ) . . . . . . . . . . . . . . . . . . . . . 20, 21

## STATEMENT OF THE CASE

The Smith County District Attorney charged Appellant by information for possession of marijuana arising from Appellant's arrest on May 26, 2014. (CR 2). Appellant filed a pretrial motion to suppress illegally seized evidence because of an unlawful inventory search. (CR 32-35). After a hearing, the trial court denied the motion. (CR 43). The trial court filed its findings of fact and conclusions of law on January 15, 2015. (CR 36-37).

On February 11, 2015, Appellant waived his constitutional right to a jury trial and entered a guilty plea to the charge with an agreed plea recommendation. (CR 48-49). On February 11, 2015, the trial court assessed punishment at 2 years deferred adjudication probation. (CR 44-47).

Appellant timely filed Notice of Appeal on February 11, 2015. (CR 43). The Certification By Trial Court to allow this appeal was filed on February 11, 2015 (CR 58) Appellant appeals the judgment based on the trial court's denial of his motion to suppress illegally seized evidence.

1

## ISSUE PRESENTED

**The trial court committed reversible error when it denied Appellant's motion to suppress illegally seized evidence, namely, marijuana, during an unlawful inventory search of the vehicle.**

## STATEMENT OF THE FACTS

Tyler Police Officer Boyce was on patrol on May 26, 2014, and conducted a traffic stop on Appellant for failure to signal a turn properly. (RR 8). Appellant provided Officer Boyce with a driver's license that was suspended and an insurance card which displayed that Appellant was an excluded driver on this vehicle. (RR 9) The vehicle was registered to Appellant's father, Juan Zepeda. The insurance card named Juan Zepeda as the insured for this vehicle. (RR 24). Said insurance was valid and in effect at the time of the traffic stop for Juan Zepeda.

Prior to the unlawful inventory search, Officer Boyce asked Appellant several questions about marijuana. (RR 16). Officer Boyce admitted he asked Appellant when Appellant last smoked marijuana. (RR 15). Officer Boyce issued Appellant citations for Driving While License Invalid and No Liability Insurance. Appellant was not under arrest at that point.

2

Officer Boyce stated he had to tow the vehicle pursuant to Tyler Police Department Towing Policy. (RR 10); (RR 48); (RR Exhibit 1 and 2). Subsequent to the officer's decision to impound and tow the vehicle, Officer Boyce conducted an inventory search of the vehicle. Officer Boyce admitted he had no intention of arresting Appellant until after the marijuana was found during the inventory search. (RR 20).

Officer Boyce testified that he did not contact Appellant's father because, as Officer Boyce stated, "He [Appellant's father] already allowed Jorge to drive the vehicle. He is just going to turn around and allow Jorge to continue driving the vehicle, so therefore, I towed the vehicle." (RR 24).

Officer Boyce agreed that there was no way he would allow Appellant's father to pick up Appellant and vehicle. (RR 28). Officer Boyce stated this was because "his father allowed an unlicensed driver to operate a motor vehicle with insurance that has him as an excluded driver." (RR 28).

Officer Boyce denied Appellant's request to call his father, Juan Zepeda, to pick up the vehicle and Appellant. (RR 27). Officer Boyce admitted he could have allowed that to happen. (RR 27). Appellant's father Juan Zepeda testified that he lived nine blocks away and would have come to pick up the vehicle and Appellant in less than ten minutes. (RR 43).

3

Officer Boyce stated he knew that Appellant's address would be roughly a mile away. (RR 30).

Officer Boyce found marijuana in the ashtray during the inventory search and arrested Appellant for the Class B Misdemeanor charge of Possession of Marijuana. (RR 14). Appellant was arrested for Possession of Marijuana only. Officer Boyce stated his plan was for Appellant to call somebody to pick up Appellant after the inventory search if the marijuana had not been found and if Appellant had not been arrested. (RR 26).

Officer Boyce agreed that the Tyler Police Department Towing Policy states that before the impoundment of a vehicle the officer shall consider mitigating circumstances not to impound the vehicle. (RR 31). Officer Boyce stated there were not any mitigating circumstances to justify not towing the vehicle. Officer Boyce did not see any mitigating circumstances.

Officer Boyce stated he towed the vehicle because "Everything I had it met the elements. He was operating the vehicle. No insurance. No license. He had a prior. That is all I needed." (RR 37).

Officer Boyce agreed that father of Appellant, Juan Zepeda, had valid insurance on this vehicle and was authorized to drive this vehicle. Officer Boyce agreed there was a request by Appellant to call his father to come and

4

pick up vehicle and Appellant. (RR 37-38). Officer Boyce agreed this incident occurred in the daytime and the vehicle could have been left in the parking lot. (RR 26). Appellant's father also testified he had valid insurance and had to go pick up his vehicle at Crow Towing Co. (RR 44).

Tyler Police Department General Order for Impoundment for Failure to Maintain Financial Responsibility 07.500 (RR 48) (RR Exhibit 1) states: "07.501 <u>PURPOSE</u>

As authorized by Tyler City Code Section 4-73, the purpose of this policy is to establish guidelines and procedures for Tyler Police Department officers who encounter individuals operating a motor vehicle without the financial responsibility required by State law, Texas Transportation Code, Chapter 601.

07.502 <u>POLICY</u>

It is the policy of the Tyler Police Department to conduct traffic enforcement that will provide maximum protection to all individuals who use the roadways within the city. As part of this strategy, the Tyler Police Department's goal is to ensure that all motor vehicles are operated with the financial responsibility required by law. Enforcement action shall be taken

5

when officers encounter individuals who fail to maintain the required financial responsibility unless mitigating circumstances discussed in the policy exist. Any action taken will be applied equitably and without discrimination to any person.

07.503 <u>FINANCIAL RESPONSIBILITY DEFINITION</u>

For the purposes of this policy, the term "financial responsibility" refers to the financial responsibility on a specific motor vehicle at the level of coverage meeting or surpassing, State requirements (Texas Transportation Code, Sections 601.051 – 601.124). Financial responsibility is required whether the vehicle is operated on a public roadway or private property. Evidence of this financial responsibility is set forth in Texas Transportation Code, Section 601.053. Enforcement action taken on private property will be with supervisor approval.

07.504 <u>TRAFFIC STOPS</u>

A.  As part of a normal traffic stop, officers shall ask the driver for the required proof of financial responsibility of the vehicle.

B.  If the driver is unable to produce the required documentation, the officer shall generally issue a citation for the appropriate offense.

C.  If the officer, either through a driver's license check or through

6

personal contacts, determines that the driver has previously been convicted for operating a motor vehicle with no financial responsibility, the officer shall impound the vehicle. Before the officer impounds a vehicle under this policy, the officer shall comply with the requirements in subsections B. – F. under "Accidents" in this policy.

D.    If the driver's license check indicates that the driver does not possess a driver's license or that the license is suspended for not having insurance and the driver is unable to show proof of financial responsibility on the vehicle being operated, the officer shall impound the vehicle. No prior conviction for failing to maintain financial responsibility is necessary when the driver does not possess a driver's license. Prior to impounding a vehicle under this policy, the officer shall comply with the same requirements as listed in subsections B through F as listed under "Accidents" in this policy.

07.505 ACCIDENTS

A.    If, during the investigation of a motor vehicle accident, an officer determines that one or more of the involved vehicles was operated without the required financial responsibility the officer shall impound

7

the vehicle(s). No prior conviction for failure to maintain financial responsibility is necessary in order to tow a vehicle involved in an accident.

B.    Impoundment should generally be restricted to those cases where the driver admits to not having financial responsibility or the officer is able to verify that no coverage exists.

C.    Before impounding a vehicle, when the operator claims to have financial responsibility but fails to show the required proof of coverage, an officer shall make reasonable efforts to determine if the vehicle is covered. Steps to verify coverage may include but are not limited to:

a.    Contacting the driver's insurance company.

b.    Contacting the driver's insurance agent.

c.    Contacting a parent or guardian if dealing with a minor.

d.    Contacting the lien holder.

e.    Checking through TexSure database.

D.    If the officer, after making reasonable efforts to verify coverage, is unable to get a definitive answer, and the driver continues to claim

8

that coverage exists, the officer may elect not to impound the vehicle. Officers should note on the accident report under "officer summary" the steps taken to verify coverage.

E. If the vehicle is impounded, the officer shall issue a citation for the failure to maintain or show proof of financial responsibility, unless the offence is classified as a class B Misdemeanor.

F. If it is determined or verified that the driver does not have the required financial responsibility but the officer believes that there are mitigating circumstances not to impound the vehicle, a supervisor will be contacted.

G. Delayed Enforcement

If an officer investigates an accident where the driver(s) show the required proof of financial responsibility, and it is later determined that the coverage was not valid; the original investigating officer shall issue a citation.

1. The officer must retrieve the original accident report from Data Management, make the appropriate correction indicating no financial responsibility and the issuance of the citation, and submit

9

a supplemental CRB-3 if the original has already been sent to DPS Austin. The officer will make a notation that the report was amended at the top of the report.

2. Additional charges may be filed by the investigating officer if appropriate (e.g. Texas Transportation Code Section 548.603, Texas Penal Code Section 37.10, etc.).

07.506 <u>IMPOUNDMENT PROCEDURES</u>

A. Before impounding a vehicle under this policy, officers should consider the mitigating circumstances surrounding the situation including:

1. Time of day.

2. Location.

3. Ability of operator to safely leave the location.

4. Availability of other units to assist with the safe removal of occupants.

5. Call demand

6. Weather conditions

7. Lighting

8. Traffic volume, conditions, and speed.

10

B.    An officer impounding a vehicle for failure to maintain or show proof of financial responsibility will make reasonable effort to provide for the safety of the driver(s) and any occupant(s). Examples of reasonable effort include, but are not limited to, transportation of the driver(s) and occupant(s) to a safe place or calling a friend or relative for a ride. If there is no reasonable way to avoid placing the driver(s) and occupant(s) in an unsafe situation, the officer shall contact a supervisor for review to not impound the car.

C.    A vehicle impounded under this policy will be taken to the wrecker company lot.

    1.    Tows will be made by the on-call wrecker from the normal Rotation List.

    2.    Officers will write the word "no financial responsibility" on the TPD Form 3 (Vehicle Release Page) under the "Reason" category.

    3.    A vehicle inventory will be completed on any vehicle that is towed.

    4.    The towing officer is to complete the 'Towed Vehicle Instruction' form and provide a copy of the form to the operator

of the vehicle. The original form is to be attached to the report for routing to Data Management. The form will also be made available in Spanish.

D.   The Shift Commander has the authority to suspend these measures based on workload or weather conditions.

07.507 <u>RELEASING VEHICLES FROM IMPOUND</u>

A.   Proof of financial responsibility, in the form of a 'Financial Responsibility Verification' form obtained from the Police Department, will be required by the wrecker company prior to the release of any vehicle being removed from the wrecker lot. In order to obtain a 'Financial Responsibility Verification' form, proof of current financial responsibility must be presented to the Police Department, which shall issue the form upon verification of the policy, and the payment of a $5.00 administrative fee, see Tyler City Code Section 4-73.

B.   A vehicle impounded for a violation of this policy will not be released from the wrecker company until the 'Financial Responsibility Verification' form obtained from the Police Department is provided.

C.   To allow for the verification of coverage, releases related to this

policy should generally occur during normal business hours (Monday – Friday, 8:00 a.m. – 5:00 p.m.) at the downtown police department. If the carrier has an after-hour contract and the coverage can be verified, then a Patrol Supervisor may authorize that the vehicle may be released. The Supervisor will have to complete the verification form from Data Management. Copies of the completed verification form and the proof of financial responsibility, and a supplemental report will be submitted to Data Management for attachment to the original case.

D. A Customer Service Representative in the Data Management Unit will take the proof of financial responsibility presented by the person that appears at the Police Department seeking verification to get the vehicle released from impound. The Customer Service Representative will attempt to make contact with the insurance agency/agent listed on the received information and attempt to verify that the proof is legitimate. If the Customer Service Representative is able to verify proof of financial responsibility and upon receipt of the $5.00 administrative fee, the Representative shall complete and then issue the 'Financial Responsibility Verification' form. The Representative

13

shall stamp the lower right of the form to authenticate the form. A copy of the form will be attached to the original report along with a copy of the proof of financial responsibility.

1.    If the Representative is unable to verify proof of financial responsibility from the presented information, the person will be asked to obtain the required information and return to the Police Department at that time for verification.

2.    If for some reason, the Representative believes that the proof that has been presented is not legitimate or is fictitious; the Data Management Supervisor will be notified. If the Data Management Supervisor determines it is necessary, an officer may be called to investigate whether criminal charges may need to be filed.

D.    After-hour exceptions may be made by an on-duty patrol supervisor

E.    If it is determined that a vehicle impounded under this policy was towed in error, the shift commander has the discretion to authorize a no-fee release. The wrecker company shall be notified to send the bill to the Police Department with the authorizing supervisor's signature.

Approved: 02/28/12"

14

## SUMMARY OF THE ARGUMENT

Appellant's two-fold position is that, first, the State did not properly follow Tyler Police Department's policy on impounding vehicles. Second, the impoundment policy of the Tyler Police Department is not reasonable. Officer Boyce did not follow the policy because he did not consider mitigating circumstances as the policy indicates.

The policy is not reasonable because it is inconsistent as to what actions are required in the decision-making process by law enforcement. Specifically, some portions of the policy indicate that vehicles "shall" be towed while other portions say that there are mitigating circumstances when towing should not occur.

In fact, the trial judge said as much in his ruling on the record. At the conclusion of the hearing on the Motion To Suppress, the trial judge stated, "Number one, poor quality of testimony. Poor quality. Number two, it appears that the Tyler ordinance conflicts with each other. One part is mandatory. It doesn't say shall. It doesn't say after considering mitigating circumstances. It says shall. The other side says mitigating circumstances. It's clear the officer didn't consider any mitigating circumstance, but it also

15

says shall. So based on that basis, the shall part, I am going to deny your motion to suppress. I don't have a bit of problem with you taking it up on that issue all day long. (RR 52).

## ARGUMENT

**The trial court committed reversible error when it denied Appellant's motion to suppress illegally seized evidence, namely, marijuana, during an unlawful inventory search of the vehicle.**

### A. Standard of Review

On March 18, 2015, the 12TH Court of Appeals, in *Kennedy v. State*, case # 12-13-00248-CR, stated the standard of review as follows: "We review a trial court's ruling on a motion to suppress under bifurcated standard of review. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327(Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Sheperd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). Almost total deference is given to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor, and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).

When deciding a motion to suppress evidence, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v.*

17

*State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)  Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony. *See State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Moreover, if, as here, the trial judge makes express findings of fact, the evidence is viewed in the light most favorable to the trial judge's ruling and determine whether the evidence supports those factual findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When there is not an express finding on an issue, the appellate court infers implicit findings of fact that support the trial court's ruling as long as those findings are supported by the record. *See id.*

The prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence." *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). When all evidence is viewed in the light most favorable to the trial court's ruling, an appellate court is obligated to uphold the ruling on a motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case. *See Ross*, 32 S.W.3d at 856; *Carmouche*, 10 S.W.3d at 327; *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).

The appellate court is to review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State*, 317 S.W.3d 907, 907-08 (Tex. App. – Houston[14th District.] 2010, no pet.) "

### B. The Law on Vehicle Inventory

On March 18, 2015, the 12TH Court of Appeals, *Kennedy v. State,* case # 12-13-00248-CR, stated "If conducted pursuant to a lawful impoundment, a police officer's inventory search of the contents of an automobile is permissible under both the Fourth Amendment of the United States Constitution and Article I, Section 9 of the Texas Constitution." *See Colorado v. Bertine*, 479 U.S. 367, 371, 107 S. Ct. 738, 741, 93 L. Ed. 2d 739 (1987); *S. Dakota v. Opperman*, 428 U.S. 364, 369, 96 S. Ct. 3092, 3097, 49 L. Ed. 2d 1000 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex. Crim. App. 1980); *Moskey v. State*, 333 S.W.3d 696, 702 (Tex. App. – Houston[1st Dist.] 2010, no pet.). Inventories serve to protect (1) the owner's property while it is in custody, (2) the police against claims or disputes over lost or stolen property, and (3) the police from potential danger. *Opperman,*

19

428 U.S. at 369, 96 S. Ct. at 3097.

Inventory searches should be designed to produce an inventory, not turned into a purposeful and general means of discovering evidence of a crime. *Florida v. Wells*, 495 U.S. 1, 4, 110 S. Ct. 1632, 1635, 109 L. Ed. 2d 1 (1990). Unless there has been a showing that the officer acted in bad faith or for the sole purpose of investigation, the officer may conduct an inventory search subsequent to a decision to impound a vehicle. *Bertine*, 479 U.S. at 372-73, 107 S. Ct. at 741-42.

The state bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the vehicle's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Garza v. State*, 137 S.W.3d 878, 882 (Tex. App. – Houston [1st Dist.] 2004, pet. ref'd).

There are two general categories of events justifying impoundment. *See Rodriquez v. State*, 641 S.W.2d 955, 958 (Tex. App. – Amarillo 1982, no writ). First, an officer may impound a vehicle when the vehicle is a danger to traffic. *See id*. Second, an officer may impound a vehicle after an arrest of the vehicle's driver when the vehicle can not be protected by any

means other than impoundment. *See id,*; *Greer v. State*, 436 S.W.3d 1, 7 (Tex. App. – Waco 2014, no pet.). An officer "need not independently investigate possible alternatives to impoundment absent some objectively demonstrable evidence that alternatives did, in fact exist." *Greer*, 436 S.W.3d at 7."

The courts have listed circumstances under which law enforcement may reasonably impound a vehicle, including (1) driver's arrest when the arrest is reasonably connected to the vehicle (2) statutory authorization (3) vehicle abandonment or a vehicle that is hazardous and presents a danger to the public (4) a reasonable belief that the vehicle is stolen (5) vehicle removal from an accident scene and (6) parking violations. *Benavides* at 811-812, *Opperman* at 369.

For an impoundment of a vehicle to be lawful, it must be reasonable under the Fourth Amendment. *Benavides* at 811. The Court in *Wells* states that an inventory search must be conducted pursuant to a "standardized criteria" or "established routine". An inventory search must not deviate from police department policy. *Moberg v. State*, 810 S.W.2d 190, 195 (Tex. Crim. App. 1991).

Impoundment and inventory searches must be carefully examined and

21

narrowly confined in each case because of a dilution of Fourth Amendment rights against unreasonable searches and seizures. *Rodriguez v. State*, 641 S.W. 2d 955 ( Tex. App. Amarillo 1982). "While it may be standard procedure to impound the vehicle of a person who is arrested, we conclude that the Fourth Amendment protection against seizures cannot be whittled away by a police regulation." *Benavides* at 812.

For example, impoundment was unlawful in an arrest for speeding and driving without a license when vehicle was legally parked in parking lot and defendant's incarceration would likely be temporary. *Fenton v. State* 785 S.W.2d 443 (Tex. App. Austin 1990).

An inventory search is reasonable only if conducted for an inventory and not as an investigatory tool to produce or discover incriminating evidence. *Wells* at 4. An inventory is proper when conducted in accordance with standard police procedures. The burden is on the State to show compliance with standard procedure. *Ward v State*, 659 S.W.2d 643, 646 (Tex. Crim. App. 1983).

The failure to provide evidence that the inventory was conducted pursuant to standard procedure invalidates it, whether or not the authority to inventory actually existed. *Gauldin v. State*, 683 S.W.2d 411.415 (Tex.

22

Crim. App. 1984). The United States Supreme Court relates that an inventory search cannot be used by law officers as a "ruse for a general rummaging." *Wells* at 3-5.

### C. **Analysis**

The actions of Tyler Police Officer resulting in the impounding and searching of the vehicle Appellant's drove were unlawful and, as such, the discovery of marijuana in the vehicle was the result of an illegal search in violation of the Fourth Amendment of the United States Constitution.

First, Officer Boyce's actions did not satisfy the standards outlined in the *Garza* ruling. Officer Boyce did not arrest Appellant prior to the search. Officer Boyce admitted he would let Appellant call someone to give him a ride once the car was impounded. In addition to the driver not being arrested prior to the impoundment, there were alternatives, other than impoundment, to insure the vehicle's safety. Officer Boyce could have contacted Appellant's father, as Appellant requested, who was the owner of the car and had insurance for the car. Additionally, Officer Boyce could have allowed

23

the car to be parked in a nearby parking lot. Either alternative would have protected the vehicle, required minimal effort by the officer, and would have avoided any need to impound the vehicle.

The third standard under *Garza* is that there was a reasonable towing and impounding policy in place. As the trial judge clearly noted, the Tyler Police Department towing and impounding policy is not clear. While one portion says that the towing shall occur, another portion of the policy says that mitigating circumstances should be considered. Section 07.504 under Traffic Stops says that the vehicle shall be impounded but then goes on to say that the officer shall comply with other subsections before impounding. Those subsections limit and restrict the general language of Section 07.504 that says the vehicle shall be impounded. The problem is that it makes no sense that the officer is told that he shall tow if a certain criteria is met and is also told at the same time that the officer shall follow other rules that would mean that impounding is not automatic. As such, the policy is not reasonable. The trial judge acknowledged that in his previously-quoted ruling.

Finally, the fourth *Garza* standard says that the policy must be followed. In this instance, Officer Boyce did not follow the policy. First,

24

Section 07.504(C) and (D) says that the vehicle shall be impounded if there is no insurance. However, the evidence is clear that there was insurance on the vehicle—just for Appellant's father, not Appellant. Furthermore, both sections instruct the officer to follow Section 07.505 (B) – (F). In this instance, Officer Boyce did not follow 07.505(B) because he was able to verify that insurance existed for the vehicle. If Officer Boyce had concerns about the insurance, he could have followed Section 07.505(C) and contacted other individuals to verify that the vehicle was covered by insurance. Section 07.505(D) lets the officer still make a decision not to impound if there is no definitive answer that insurance exists. While that doesn't apply to this situation because insurance was confirmed, Sub-section (D) notes that the officer still has discretion not to impound, which is contrary to Officer Boyce's interpretation of the policy. In his eyes, he has to impound no matter what. That's not what the policy says in Section 07.505.

Section 07.505(F) allows for the officer to consider mitigating circumstances before impounding. On top of the fact that insurance was verified, the officer shall consider sub-section (F) concerning mitigating circumstances such as an alternate placement of the vehicle, time of day,

25

safety of driver, transporting the driver, allowing driver to call a relative or friend. In this situation, had the officer considered all of the circumstances as the policy says the officer is to do, then there would have been no need to impound the vehicle. Appellant's father owned the vehicle and had insurance for the vehicle in his name. A simple, reasonable phone call to Appellant's father would have avoided any need to impound the vehicle. The officer was not going to allow that until after the impounding and searching of the vehicle because the officer wanted to investigate the contents of the car for contraband. In no way is that a permissible purpose for the inventory search exception.

Additionally, the two *Greer* factors were not present. First, there was no danger to traffic nor, second, was Appellant arrested before the issue of impoundment arose. The search had to be reasonable and be the result of properly following a reasonable policy. In this instance, policy was not followed and the inconsistencies in policy indicate it is unreasonable anyway.

If we analyze the officer's actions and the policy based on the sample of permissible circumstances outlined in *Benavides* and *Opperman*, the impounding of Appellant's vehicle did not stem from Appellant's initial

26

arrest, statutory authorization, vehicle abandonment, vehicle presenting hazard to public, belief that vehicle is stolen, vehicle removed from accident scene, or parking violations.

The trial court's Findings of Fact #7 and #8 states "Tyler Police Department's standard policy regarding the impoundment and inventorying of vehicles demands the impoundment of vehicles following: (1) confirmation that the Defendant has a previous conviction for failing to maintain financial responsibility; or (2) upon determination that the Defendant's license is currently suspended for not having insurance and the Defendant fails to prove financial responsibility on the vehicle being operated. A lawful inventory of the Defendant's vehicle was performed pursuant to Tyler Police Department's standardized policy. Officer Boyce was acting in good faith and was not motivated by a desire to uncover evidence. A green leafy substance suspected to be marijuana was found during the inventory."

The trial court's Conclusion's of Law # 3-5 states that "a green leafy substance believed to be marijuana was uncovered during a lawful inventory pursuant to standardized Tyler Police Department guidelines. The Defendant's vehicle was lawfully towed pursuant to Tyler Police

27

Department General Order 07.504(C) and 07.504(D). Officer Boyce conducted an inventory of the Defendant's vehicle in compliance with written Tyler Police Department policy. The substance believed to be marijuana was obtained pursuant to a lawful impoundment and inventory of the Defendant's vehicle and therefore the Defendant's Motion to Suppress is DENIED."

The trial court did not take into account 7.502 **Policy.** "Enforcement action shall be taken when officers encounter individuals who fail to maintain the required financial responsibility unless mitigating circumstances discussed in this policy exist."

This 7.502 **Policy** is the summary of this General Order. It is clear that officers cannot tow the vehicle if there are mitigating circumstances. The towing policy is designed for vehicles that cannot be legally driven. However, the owner of the vehicle, Juan Zepeda, had the required insurance and could have driven the vehicle away without an impoundment. This is clearly a mitigating circumstance.

Even reviewing the evidence in the light most favorable to the trial court's ruling, the evidence does not support those factual findings. Furthermore, the evidence does not satisfy the Garza standards. The trial

28

court's conclusions are not supported by the record and are not correct under any legal theory because the policy was not followed. There was insurance on the vehicle, the owner had proper insurance, and no mitigating circumstances were considered.

Simply put, the officer's actions were not reasonable nor is the language of the policy reasonable. Reasonableness dictates that the officer allow Appellant call the authorized driver and owner of the vehicle to come to the scene and pick up the car. Reasonableness dictates that no impoundment occur.

## PRAYER

WHEREFORE, Appellant prays the Order of the trial court denying Appellant's Motion to Suppress Evidence be reversed and remanded to the trial court for a new trial with orders the Motion to Suppress Evidence be GRANTED and for such other and further relief to which Appellant may be justly entitled.

Respectfully Submitted,

JEFF SANDERS
State Bar No.: 24033153
120 S. Broadway, Suite 112
Tyler, Texas 75702
(903) 593-8040
(903) 595-5532 fax

29

## CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify a true and correct copy of the foregoing instrument was served upon the Smith County District Attorney's Office by hand delivery on this the 10th day of June, 2015.

*Jeff Sanders*

JEFF SANDERS

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3), the undersigned attorney certifies that this brief complies with the length requirements of the Texas Rules of Appellate Procedure in that the brief has 6,573 words.

*Jeff Sanders*

JEFF SANDERS